**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL C.,**

               **Plaintiff,**              6:17-cv-920
                                                                    (GLS)

        v.

**COMMISSIONER OF SOCIAL SECURITY,**

               **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Meggesto, Crossett & Valerino, LLP<br>313 East Willow Street, Suite 201<br>Syracuse, NY 13203 | KIMBERLY A. SLIMBAUGH, ESQ. |
| **FOR THE DEFENDANT:**<br>HON. GRANT C. JACQUITH<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261<br><br>Steven P. Conte<br>Regional Chief Counsel<br>Nahid Sorooshyari<br>Assistant Regional Counsel<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | EMILY M. FISHMAN<br>Special Assistant U.S. Attorney |

**Gary L. Sharpe
Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Michael C. challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Michael's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

On December 11, 2012, Michael filed an application for DIB, alleging a disability onset date of March 1, 2012. (Tr.[1] at 102, 276-79.) On December 12, 2012, he filed an application for SSI, alleging the same disability onset date. (*Id.* at 103, 280-89.) Both claims were denied on April 10, 2013, (*id.* at 157-64), and Michael requested a hearing before an Administrative Law Judge (ALJ) on May 9, 2013, (*id.* at 166-67). On June 9, 2014, Michael appeared with his attorney and testified before ALJ John P. Ramos (hereinafter "the ALJ"). (*Id.* at 66-101). The ALJ denied his

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

claims in a decision dated October 15, 2014.  (*Id.* at 132-52.)  Michael filed a request for review, (*id.* at 219-20), and the Appeals Council remanded his case back to the ALJ on February 17, 2016, (*id.* at 153-56).

The ALJ held a second hearing on November 10, 2016, (*id.* at 34-65), and he issued a decision denying Michael's claims on January 6, 2017, (*id.* at 8-33).  This decision became the Commissioner's final decision when the Appeals Council denied Michael's request for review. (*Id.* at 1-5, 271-75).

Michael commenced the instant action on August 21, 2017 by filing his complaint, wherein he seeks review of the Commissioner's decision. (Compl. at 1.)  Thereafter, the Commissioner filed a certified copy of the administrative transcript.  (Dkt. No. 9.)  Each party filed a brief seeking judgment on the pleadings.  (Dkt. Nos. 10, 14.)

### III.  Contentions

Michael contends that the ALJ erred by: (1) failing to appropriately evaluate the opinions of Michael's orthopedist and therapist, (Dkt. No. 10 at 10-11); (2) improperly assessing Michael's residual functional capacity (RFC), (*id.* at 12-13); (3) substituting his own opinion for a consultative examiner's (CE) opinion regarding Michael's postural limitations, (*id.* at 13-

14); (4) failing to resolve a conflict in the vocational expert's (VE) testimony, (*id.* at 14-16); and (5) failing to find that Michael's back and carpal tunnel syndrome are severe impairments, (*id.* at 16-18). The Commissioner makes various counterarguments that the ALJ's decision is supported by substantial evidence and not based on legal error. (Dkt. No. 14 at 6-18.)

## IV. Facts

The facts in Michael's brief, (Dkt. No. 10 at 2-9), are adopted as supplemented in the Commissioner's brief, (Dkt. No. 14 at 2).

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-3 (N.D.N.Y. Mar. 19, 2008).

---

[2] The section 405(g) standard of review in DIB proceedings under Title II of the Act also applies to SSI proceedings under Title XVI of the Act. *See* 42 U.S.C. § 1383(c)(3). Similarly, the analysis of SSI claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to DIB claims under Title II. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## VI. Discussion

### A. Whether the ALJ Failed to Appropriately Evaluate the Opinions of Michael's Treating Sources

First, Michael argues that the ALJ erred by failing to give controlling weight to his treating orthopedist, Dr. Frederick Lemley. (Dkt. No. 10 at 10, 11.) Specifically, Michael argues that he underwent a functional capacity evaluation (FCE), which "found [he] was capable of performing work at the 'sub sedentary' strength level and he demonstrated a positional tolerance for only three hours per day," and Dr. Lemley agreed with these findings. (*Id.* at 10.) Michael also argues that the ALJ erred in evaluating the opinion of his treating therapist, Dan Silverman, that he would miss four days of work a month. (*Id.* at 11.) As explained below, the court disagrees with Michael for the reasons articulated by the Commissioner. (Dkt. No. 14 at 11-13, 15-16.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating source's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.*

5

§ 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length, and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "mention[] every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Id*. (internal quotation marks and citations omitted).

First, the ALJ's RFC is consistent with Dr. Lemley's opinion that Michael can do sedentary work. (Tr. at 476.) More importantly, the ALJ's decision explains why he gave only some weight to the FCE that Dr. Lemley adopted. (*Id.* at 18-19.) That is, the ALJ rejected the FCE's

6

conclusion that Michael could work only three hours per day "because it is contradicted by the fact that [he] responded well to a spinal cord stimulator, and EMG/nerve conduction studies of his lower extremities from December 2012 were normal." (*Id.* at 19, 499, 692.) In other words, Dr. Lemley's adopted opinion was inconsistent with the other substantial evidence.[3] The failure to explicitly address Dr. Lemley's letter is therefore harmless. (Dkt. No. 14 at 11.) Moreover, in any event, the statement that Michael could work only three hours per day is a statement on an issue reserved to the Commissioner. *See Savage v. Comm'r of Soc. Sec.*, Civil Action No. 2:13–cv–85, 2014 WL 690250, at \*5 (D. Vt. Feb. 24, 2014); *Rinker v. Chater*, No. 95 Civ. 3923, 1997 WL 47791, at \*5 & n.7 (S.D.N.Y. Feb. 6, 1997)*.*

Michael also argues that the ALJ erred in evaluating Silverman's opinion that he would miss four days of work a month. (Dkt. No. 10 at 11.) Specifically, he argues that the ALJ erred in discounting this opinion based on Michael's benign mental status examinations. (*Id.*) However, the ALJ explained that he did not adopt Silverman's conclusion because it was not

---

[3] The court also notes that the FCE was completed, in the first instance, by a physical therapist, who is not an acceptable medical source. (Dkt. No. 14 at 11-12 (citing *Genier v. Astrue*, 298 F. App'x 105, 108-09 (2d Cir. 2008)).)

7

fully supported by objective evidence in the record. (Tr. at 20.) The ALJ noted that Silverman "indicated that the limitations he identified have existed since 2004; yet, [Michael] was capable of working after 2004 at levels indicative of substantial gainful activity in spite of his psychological symptoms." (*Id.*) The treatment notes described by the ALJ—including that Michael's "affect was appropriate to thought content, . . . no delusions or hallucinations were present, thought content was normal and appropriate, no suicidal or homicidal ideations were present, . . . and insight and judgment were good"—also support his decision not adopt Silverman's conclusion. (*Id.*)

B.  **Whether the ALJ Improperly Assessed Michael's RFC**

Michael makes two arguments that the ALJ's RFC is not supported by substantial evidence. (Dkt. No. 10 at 12-13.)[4] First, he argues that the ALJ's reliance on the state agency medical consultant, Dr. Echevarria, was in error because of his use of the term "moderate." (*Id.* at 12.) But the case Michael relies on, *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), has been superseded by regulations, and case law holds that moderate

---

[4] Michael makes an additional argument based on postural limitations, which is addressed in Part C, infra.

limitations do not prevent a claimant from performing unskilled work, as the ALJ found regarding Michael. (Dkt. No. 14 at 14-15 (citing cases).)[5] Michael's second argument is that "when the VE was asked a hypothetical question qualifying this opinion, he responded that the limitations of work were preclusive. This inconsistently [sic] is not resolved in the decision." (Dkt. No. 10 at 12.) Without any citation to the record or explanation, the court is unable to decipher this inchoate argument. *Cf. DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) (noting impropriety of asking the court "to play archaeologist with the record").

C. **Whether the ALJ Substituted His Own Opinion for a CE's Opinion Regarding Postural Limitations**

Michael argues that the ALJ improperly declined to consider the postural limitations noted by a CE, Dr. Tanya Perkins-Mwantuali ("the CE"), and the FCE. (Dkt. No. 10 at 13-14.) Specifically, Michael takes issue with the ALJ's statement that the postural limitations referred to his back—which was not found to be a severe impairment—and not his complex regional pain syndrome (CRPS), which was found to be a severe impairment. (*Id.*; Dkt. No. 14 at 3.) He argues that the ALJ erred in doing

---

[5] Michael's misguided reliance on *Curry* also dooms his vagueness argument as it pertains to depression and anxiety. (Dkt. No. 10 at 13.)

so, and "[a]t the very least, there is an inconsistency with regard to the opinion that should have been clarified and was not addressed." (Dkt. No. 10 at 14.)

The court disagrees. To begin with, Michael again fails to provide a single citation to the record in support of his argument. (*Id.* at 13-14.) To wit, there is nothing in the CE's report to suggest that the limitations were related to Michael's CRPS and not his back. (Tr. at 17-18; 655-59.) Indeed, as the Commissioner argues, the ALJ "rejected the [CE]'s opinion that [Michael] had moderate to marked limitation with squatting, walking, standing[,] and climbing (Tr. at 659), because the opinion was not based on an underlying 'severe' impairment." (Dkt. No. 14 at 9 (quoting Tr. at 18).) Moreover, as explained by the Commissioner, even if the CE's opinion on Michael's postural limitations was based on his CRPS, such opinion is inconsistent with the CE's physical examination findings. (Dkt. No. 14 at 9-10.) To that end, the ALJ explained that the postural limitations in the FCE were "contradicted by the fact that [Michael] was able to change for the [CE], get on and off [the] examination[] table, and rise from the chair without noted difficulty or assistance." (Tr. at 18-19.) Finally, as explained by the Commissioner, even if the ALJ had accepted the CE's opinion

10

regarding postural limitations, Michael would still be capable of performing the ALJ's RFC. (Dkt. No. 14 at 10.)

D. **Whether the ALJ Failed to Resolve a Conflict in the VE's Testimony**

Michael also argues that the VE did not provide for GED reasoning in response to a hypothetical question, and the VE did not provide a reasonable explanation that is supported by the evidence in the record on which the ALJ relied. (Dkt. No. 10 at 14-15.) Specifically, Michael argues that "an individual limited to simple routine repetitive tasks, by definition, is incapable of carrying out detailed written and oral instructions," which is required by the jobs identified by the VE—all three of which have a GED reasoning level of three. (*Id.* at 14, 15.) Michael also argues that the Social Security Administration's (SSA) own policy statement indicates that GED reasoning level three jobs are inappropriate where there is a limitation to unskilled work. (*Id.* at 15.)

The court agrees with the Commissioner's arguments to the contrary. (Dkt. No. 14 at 16-17.)[6] As the ALJ's RFC was based on substantial evidence, the ALJ was correct to rely on the VE's testimony that a

---

[6] Yet again Michael fails to provide any citation to the record. (Dkt. No. 10 at 14-15.)

11

hypothetical person with Michael's RFC, age, education, and work experience, could perform jobs that exist in significant numbers in the national economy. (Tr. at 54-56); *see Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983)). Specifically, Michael's contention that unskilled work is incompatible with a GED reasoning level of three is mistaken. *See Maenza v. Colvin*, 14-CV-6596, 2016 WL 1247210, at *14 (W.D.N.Y. Mar. 24, 2016) (holding plaintiff limited to unskilled work could perform work with a GED level of three) (citing cases); *Healy v. Colvin*, No. 3:15-cv-01579, 2016 WL 4581403, at *7 (D. Conn. Sept. 2, 2016) (holding limitation to unskilled work "not inconsistent with either jobs requiring GED level 2 or 3 reasoning") (internal quotation marks and citation omitted). The court also finds the SSA memorandum cited by Michael, (Dkt. No. 10, Attach. 3), unpersuasive for the reasons argued by the Commissioner, (Dkt. No. 14 at 17). Finally, Michael's educational background—he has his GED and had a CDL, (Tr. at 73)—is consistent with the requirements of a GED reasoning level three job. *See Maenza*, 2016 WL 1247210, at *14.

### E. Whether the ALJ Erred in Finding that Michael's Back and Carpal Tunnel Syndrome Are Not Severe Impairments

Michael finally argues that the ALJ should have found that his back and his carpal tunnel syndrome were severe impairments. (Dkt. No. 10 at 16-18.) However, Michael bore the burden of proving that his impairments were severe. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). The court agrees with the Commissioner that Michael failed to prove that his back and carpal tunnel syndrome were severe impairments. (Dkt. No. 14 at 6-8.) The ALJ cited to substantial evidence in the record showing that Michael's back pain was non-severe and a symptom of his CRPS, and treatment for his back pain was to alleviate his CRPS. (Tr. at 14-15, 680-81, 1352.) Regarding his carpal tunnel syndrome, the ALJ noted that the CE's physical examination found intact hand and finger dexterity, as well as a grip strength of five out of five. (*Id.* at 18, 658.) As the ALJ explained, although Michael testified to ongoing stiffness, pain, and cramping in his hands and wrists, the objective medical evidence—including an EMG, electrodiagnostic study, and a second EMG—showed largely normal findings. (*Id.* at 15, 436, 1005.) Finally, even if the ALJ erred in classifying Michael's back and carpal tunnel syndrome as non-severe, it would be harmless error because the ALJ proceeded past step two and considered the effects of all of his symptoms. (*Id.* at 17); *see Reices-Colon v. Astrue*,

13

523 F. App'x 796, 798 (2d Cir. 2013); *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010).

F.  **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision, as it is supported by substantial evidence and not based on legal error.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Michael's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 28, 2018  
Albany, New York

*Gary L. Sharpe*  
Gary L. Sharpe  
U.S. District Judge